**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| VERNA MAXWELL CLARKE, an individual on behalf of herself and others similarly situated; LAURA WITTMANN, an individual on behalf of herself and others similarly situated, | No. 19-55784 D.C. No. 2:16-cv-04132-DSF-KS |
| *Plaintiffs-Appellants*, v. AMN SERVICES, LLC, DBA Nursechoice, *Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted July 8, 2020
Pasadena, California

Filed February 8, 2021

Before: Bobby R. Baldock,[*] Marsha S. Berzon, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Berzon

---

[*] The Honorable Bobby R. Baldock, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

# SUMMARY[**]

## Labor Law

The panel reversed the district court's summary judgment in favor of the defendant and remanded in an action under the Fair Labor Standards Act.

When plaintiffs worked as clinicians for defendant AMN Services, LLC, a healthcare staffing company, they were paid both a designated hourly wage and an amount denominated a weekly per diem benefit. On behalf of two certified classes of employees who had worked for AMN at facilities more than 50 miles away from their tax homes, plaintiffs alleged that their weekly per diem benefits were improperly excluded from their regular rate of pay under the FLSA, thereby decreasing their wage rate for overtime hours.

The panel held that the per diem benefits functioned as compensation for work rather than as reimbursement for expenses incurred by traveling clinicians, and the benefits were thus improperly excluded from plaintiffs' regular rate of pay for purposes of calculating overtime pay. The panel relied on a combination of factors, including the tie of the per diem deductions to shifts not worked regardless of the reason for not working; a "banking hours" system; the default payment of per diem on a weekly basis, including for days not worked away from home, without regard to whether any expenses were actually incurred on a given day; and the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

payment of per diem in the same amount, but as acknowledged wages, to local clinicians who did not travel.

The panel reversed the district court's grant of summary judgment and remanded for the district court to enter partial summary judgment in plaintiffs' favor as to whether the per diem payments to class member employees should be considered part of the employees' rate of pay and to conduct further proceedings.

## COUNSEL

Kye D. Pawlenko (argued) and Matthew B. Hayes, Hayes Pawlenko LLP, Pasadena, California, for Plaintiffs-Appellants.

Sarah Kroll-Rosenbaum (argued), Kenneth D. Sulzer, and Steven B. Katz, Constangy Brooks Smith & Prophete LLP, Los Angeles, California, for Defendant-Appellee.

Margaret A. Grignon (argued) and Anne M. Grignon, Grignon Law Firm LLP, Long Beach, California, for Amicus Curiae

## OPINION

BERZON, Circuit Judge:

When Verna Clarke and Laura Wittmann ("Plaintiffs") worked as clinicians for AMN Services, LLC ("AMN"), they were paid both a designated hourly wage and an amount denominated a weekly per diem benefit. On behalf of two certified classes of employees who have worked for AMN at

facilities more than 50 miles away from their tax homes ("traveling clinicians"), Clarke and Wittmann allege that their weekly per diem benefits were improperly excluded from their regular rate of pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, thereby decreasing their wage rate for overtime hours.

The FLSA generally prohibits an employer from requiring an employee to work longer than forty hours in any workweek unless the employer pays for the excess hours an overtime wage of "not less than one and one-half times the regular rate" to the employee. 29 U.S.C. § 207(a)(1). In calculating the regular rate paid to the employee, the FLSA excludes several categories of payments, including:

> [P]ayments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

*Id.* § 207(e)(2).

Plaintiffs assert that the per diem payments AMN paid them when they worked away from home operated as wages and so should have been included in the calculation of Plaintiffs' regular rate of pay for purposes of overtime rate. AMN avers that Plaintiffs' per diem benefits were not wages but, instead, reasonable reimbursement for work-related

expenses incurred while traveling on assignment and were therefore properly excluded under the FLSA from the overtime rate calculation.[1] So the central inquiry in this case is whether the per diem payments were properly excluded from the regular rate. We hold the record establishes that the contested benefits functioned as compensation for work rather than as reimbursement for expenses incurred, and that the per diem benefits were thus improperly excluded from Plaintiffs' regular rate of pay for purposes of calculating overtime pay.

## I.

## A.

AMN is a healthcare staffing company that places hourly workers on short-term assignments throughout the United States.[2] AMN pays clinicians a per diem amount that is, in

---

[1] The Internal Revenue Service permits employers to pay per diems and travel expenses from an "accountable plan." Per diems so paid need not be reported as wages and are tax-exempt. 26 C.F.R. § 1.62-2(c)(4). Accountable plans must cover only expenses connected to the business that are substantiated, either individually or by reasonably calculating a per diem payment. *Id.* § 1.62-2(d). Accountable plans also require employees to return amounts in excess of individually substantiated expenses or, for per diem payments, amounts paid for days or miles of travel not taken. *Id.* § 1.62-2(f).

[2] The parties refer to the hourly healthcare workers employed by AMN, including nurses and technicians, collectively as "clinicians," so we do as well.

part, based on the federal Continental United States (CONUS) reimbursement rates.[3]

The details of how the AMN per diem payments operate are central to this case. According to AMN, the per diems paid to traveling clinicians are provided to reimburse them for the cost of meals, incidentals, and housing while working away from home.[4] A traveling clinician is not required to document her expenses to receive a per diem; she need only sign an affirmation that her tax home is further than 50 miles from her assigned facility. AMN treats traveling clinicians' per diem payments as nontaxable income and excludes them from the regular rate of pay. Plaintiffs assert that although the per diems are not included as part of traveling clinicians' regular hourly wage rate for calculating overtime, AMN presents the combined value of a traveling clinician's hourly wages and per diem benefits as "weekly pay" when recruiting clinicians.

Although most clinicians are contracted to work only three 12-hour shifts per week, the maximum weekly per diem benefit compensates traveling clinicians for seven days' worth of expenses. If a clinician works the weekly shifts required by her employment contract, she is paid the maximum weekly per diem benefit. Clinicians do not receive a higher per diem if they work extra hours or shifts beyond the weekly minimum. Clinicians can, however, "bank

---

[3] AMN uses the CONUS rates to determine the maximum amounts of the weekly per diem payments. During the class period, AMN fixed the meal and incidental per diem allowance at $245 per week, or $35 per day, for all clinicians, which "did not exceed the applicable CONUS rate for any assignment location at AMN."

[4] Traveling clinicians have the option of living in company-arranged housing but most choose to receive a lodging per diem.

hours" on days or weeks in which they work extra hours, and later "offset missed shifts" if they have enough banked hours.

The AMN policy underlying the regular rate of pay issue before us is the company's practice of prorating traveling clinicians' per diem payments when they work fewer hours or shifts than required by their employment contracts. Until the end of 2014, the per diem payments were prorated based on hours missed: for each hour a clinician failed to work, AMN would deduct $18 from the weekly per diem benefits. In 2015, AMN switched to a shift-based prorating system: if a clinician contracted to work three shifts per week misses a shift, "the per diem allowance . . . advanced to her the week before [is] adjusted by one-third." If a clinician works for part but not all of the required hours in a shift, AMN will round to the nearest shift. But if a clinician "works more than one-half of each required shift, but still falls short of the minimum required weekly hours . . . AMN may adjust the per diem based on the proportionate number of shifts a clinician did not work." For example, if a clinician required to work three 12-hour shifts per week works only three 8-hour shifts, her per diem is reduced by one-third to account for her missing the equivalent of one shift.

AMN makes certain exceptions to this practice of prorating per diem benefits. First, per diems are not reduced if a clinician was prepared to work but the hospital cancels her shift. Second, if a clinician works a scheduled shift but does not, for any reason, work more than half the required hours in the shift, the clinician's per diem benefit will not be prorated if the clinician has "a sufficient amount of banked hours." Per diem payments are prorated for all other time missed, including for absences due to illness for which the clinician receives paid sick leave.

Most of AMN's employees are assigned to work at facilities more than 50 miles away from their permanent residences. But AMN also employs "local clinicians" who work at facilities within 50 miles of their homes. Local clinicians also receive per diems. For them, per diems *are* included as part of their wages for both tax purposes and calculation of their regular rate of pay for overtime purposes. So local clinicians are paid at a higher hourly rate for overtime hours than are travelling clinicians. AMN explains that local clinicians' per diems function as "an incentive for working the minimum required hours."

**B.**

Clarke and Wittmann worked as traveling clinicians for AMN from January to April 2016 and December 2014 to March 2015, respectively. Plaintiffs filed suit in state court in May 2016; the case was subsequently removed to federal court. The operative amended complaint, filed in December 2016, alleges claims for unpaid overtime under both the California Labor Code and the FLSA, as well as other, derivative state law claims. The parties agree that the same standards apply to the federal and corresponding state law claims. *See* California Division of Labor Standard Enforcement, *DLSE Enforcement Policies and Interpretations Manual*, § 49.1.2 (2019) ("In not defining the term 'regular rate of pay', [California's] Industrial Welfare Commission has manifested its intent to adopt the definition of 'regular rate of pay' set out in the [FLSA].").[5]

---

[5] This opinion, for clarity, analyzes the regular rate of pay issue under the FLSA, with the understanding that, except as noted, the same analysis applies to the California Labor Code.

After the district court certified California-wide classes for the state law claims and conditionally certified a nationwide FLSA collective,[6] the parties filed cross motions for summary judgment focusing on "the central question in the case: whether certain per diem payments to class member employees should be considered part of the employees' 'regular rate' and therefore considered when calculating overtime pay rates." The district court held that there were no relevant material disputes of fact and granted summary judgment in AMN's favor on the FLSA and state unpaid wages causes of action. We review the district court's grant of AMN's motion for summary judgment de novo. *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016).

## II.

Generally, the regular rate of pay for FLSA purposes includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). Non-exempt employees who work more than 40 hours in a week must be paid overtime for hours worked over 40 at an hourly rate of at least one-and-a-half times their regular rate. *Id.* § 207(a)(1).[7] But the FLSA provides for exemptions, allowing employers to exclude certain payments from the

---

[6] The FLSA allows an employee to bring an action on behalf of herself and "similarly situated" employees who file written consent forms with the court to become parties to the action. 29 U.S.C. § 216(b); *see Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122–23 (9th Cir. 2009).

[7] California law further provides that employees subject to the state's overtime law must be paid at least one-and-a-half times their regular rate for any time worked over eight hours in a single day and any hours on the seventh day of work in a single workweek. Cal. Lab. Code § 510.

regular rate of pay and so from the rate of overtime pay. *See id.* § 207(e)(2).

FLSA exemptions are construed under "a fair (rather than a 'narrow') interpretation." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). Determining what is included in the regular rate of pay is a question that "cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014) (quoting *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003)); *see also* 29 C.F.R. § 778.108. Here, AMN, as the employer, bears the burden of establishing that its per diem payments qualify as an exemption from the regular rate of pay under the FLSA. *Flores*, 824 F.3d at 897 (internal quotation marks omitted).

## A.

### i.

We begin by considering how this Court has assessed whether payments are excludable from the FLSA's regular rate of pay under § 207(e)(2).[8]

In *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.* ("*Local 246*"), an employer asserted that supplemental payments designed to bring disabled workers' wages to their pre-disability rates could be excluded from the employees' regular rate of pay under § 207(e)(2), as they are "other similar payments to an employee which are not made

---

[8] All references to statutory sections of the FLSA refer to the U.S. Code, Title 29.

as compensation for his hours of employment." 83 F.3d 292, 296 (9th Cir. 1996). This Court disagreed, holding that the payments could not be excluded from the regular rate of pay because they operated as compensation. *Id.* at 295. *Local 246* explained that because the "entire function of [the] supplemental payments [was] to ensure that the workers [were] paid for their . . . work at the rate that they used to be paid for their pre-disability work," the payments were necessarily remuneration for employment and could not be excluded from the regular rate. *Id.*

*Flores v. City of San Gabriel*, relying on *Local 246*, reiterated that determining whether a payment can be excluded from the FLSA's regular rate depends on whether the payment "is properly characterized as compensation" for work. 824 F.3d at 900. *Flores* concerned cash-in-lieu-of-benefits payments, providing monthly payments to employees who declined medical coverage through the employer. We held those payments were not "other similar payments to an employee which are not made as compensation for his hours of employment" and so had to be included in the calculation of workers' regular rate of pay. *Id.* at 898. Even though the payments were not tied to the number of hours worked, we concluded, they were "not similar to payments for non-working time or reimbursement for expenses," and so were not excludable under § 207(e)(2). *Id.* at 900–01. Although *Local 246* and *Flores* both involved § 207(e)(2)'s "other similar payments" clause, their conclusion that a payment's *function* controls whether the payment is excludable from the regular rate under § 207(e)(2), applies here.

In determining a payment's function, the tie between payments and time worked is relevant but not determinative in assessing whether those payments are properly excludable

from the regular rate under § 207(e)(2). Payments not tied to hours worked may function as compensation for work, *see Flores*, 824 F.3d at 900. Still, whether payments increase, decrease, or both based on time worked provides an important indication as to whether the payments are functioning as compensation rather than reimbursement.

In the context of per diem payments in particular, the function test requires a case-specific inquiry based on the particular formula used for determining the amount of the per diem. Along with the monetary relationship between payment and hours, other relevant—but certainly not dispositive—considerations include whether the payments are made regardless of whether any costs are actually incurred, and whether the employer requires any attestation that costs were incurred by the employee, *see* pp. 5–6 & n.1, *supra*. In some cases, the amount of the per diem payment relative to the regular rate of pay may be relevant to whether the purported per diem functions as compensation or reimbursement. *See, e.g.*, *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010). And the function analysis may also consider whether the payments are tethered specifically to days or periods spent away from home or instead are paid without regard to whether the employer is away from home.

### ii.

Applying the payment-function test from *Flores* and *Local 246* comports with out-of-circuit case law that has addressed the reimbursement clause of § 207(e)(2), as well as with guidance from the Department of Labor ("DOL"). Every circuit to consider whether a payment scheme is excludable from the FLSA's regular rate as reimbursement for work-related expenses has assessed how the payments

function, taking into account factors similar to those we have indicated.

In *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33 (1st Cir. 2014), for example, the First Circuit focused on how a per diem functions to determine whether it is excludable from the regular rate of pay even though the amount of the per diem is based on federal reimbursement rates. *Id.* at 40. The facts of *Newman* are similar to those here. As here, the per diems in *Newman* were based on the "relevant Internal Revenue Service Federal Travel Reimbursement rate," and the *Newman* district court held that the per diems "reasonably approximated work-related expenses." *Id.* at 35–36. But in reversing the district court's approval of the exclusion of the per diem's from the regular rate of pay, *Newman* explained that the "animating concern of the FLSA statutes . . . is to examine the *substance* of a purported per diem payment and to ensure that it is actually used to offset expenses an employee incurs due to time spent away on the employer's business. The goal is to pierce the labels that parties affix to the payments and instead look to the realities of the method of payment." *Id.* at 39 (emphasis added). *Newman* held that in reducing per diem payments "for an early end to the work week, [the employer] based those reductions on the exact number of hours worked in the week," and that payments based on total hours worked could not be excluded from the FLSA's regular rate of pay. *Id.* at 39–40.

In *Baouch v. Werner Enterprises, Inc.*, 908 F.3d 1108 (8th Cir. 2018), similarly, the Eighth Circuit held putative expense payments to truck drivers based on miles driven were properly considered part of the FLSA's regular rate of pay. *Id.* at 1116. *Baouch* explained that before evaluating "whether the [p]ayments approximated actual expenses," the

district court properly assessed "whether the [p]ayments were reimbursements for expenses incurred solely for [the employer's] benefit or convenience." *Id*. Because the payments were tethered to the miles driven, a metric poorly linked to whether the driver has to be away from home or how long she needs to be away, the payments "function[ed] as a wage rather than as true per diem reimbursement," the Eighth Circuit held, and so were properly included in the FLSA's regular rate of pay. *Id.*

*Baouch*'s mode of analysis is especially relevant here. In granting AMN's motion for summary judgment, the district court in this case, relying on the fact that the per diem payments are based on federal rates and could reasonably be expected adequately to reimburse clinicians for expenses incurred while traveling on assignment, held that the per diem payments do not change "from one based on reimbursement of expenses to one tied to hours worked" because they are reduced when clinicians miss a required shift. But that analysis improperly makes the *amount* of the payments—rather than how the payments *function*—determinative. The fact that, for some employees, a weekly per diem payment is in an amount that could reimburse an employee's expenses if they functioned as expense payments is not enough—the payment can both be reasonable in amount as reimbursement for an employee for her expenses and still *function* as a wage.

*Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010), provides yet another—but more obvious—example of per diem payments functioning as wages and so improperly excluded from the FLSA's regular rate of pay. The employer in *Gagnon* artificially designated a portion of its employee's wages as a "per diem" and excluded those payments from the regular rate as reimbursement for work-

related expenses. *Id.* at 1042. The Fifth Circuit noted that the per diem was paid at an hourly rate; that the per diem did not reasonably approximate actual expenses; and that the court could "conceive of no reason why a legitimate per diem would vary by the hour and be capped at the forty-hour mark, which not-so-coincidentally corresponds to the point at which regular wages stop and the overtime rate applies." *Id.* at 1041–42. *Gagnon* therefore affirmed the district court's determination that the per diem payments were improperly excluded from the regular rate of pay.

In contrast, *Sharp v. CGG Land (U.S.), Inc.*, 840 F.3d 1211, (10th Cir. 2016), involved per diems that did function as reimbursement for work-related expenses and so were properly excluded from the regular rate of pay. *Sharp* held that a flat meal per diem, provided for each day an employee was required to be away from home, was properly excluded from the regular rate of pay. The per diem was not paid "when employees worked from their home locations or when food was provided at the remote locations." 840 F.3d at 1213. The Tenth Circuit noted that "employees received the [per diem] payments only when [the employer] required them to work away from home," and that the parties stipulated that the per diem payments were "a reasonable meal allowance." *Id.* at 1215. Because the per diems functioned to reimburse expenses incurred while working away from home, the payments were properly excluded under § 207(e)(2).

Finally, Department of Labor ("DOL") interpretations of § 207(e)(2) also support assessing how payments operate to determine if they are properly excluded from the FLSA's regular rate of pay. 29 C.F.R. § 778.224, effective as of January 15, 2020, addresses § 207(e)(2)'s "Other similar payments" clause and explains that excludable payments "do

not depend on the hours worked, services rendered . . . or other criteria that depend on the quality or quantity of the employee's work." 29 C.F.R. § 778.224(a). And the DOL's Field Operation Handbook ("FOH") states:

> If the amount of per diem . . . is based upon and thus varies with the number of hours worked per day or week, such payments are a part of the regular rate. . . . [But] this does not preclude an employer from making proportionate payments for that part of a day that the employee is required to be away from home on the employer's business. For example, if an employee returns to his/her home or employer's place of business at noon, the payment of only one-half the established per diem rate for that particular day would not thereby be considered as payment for hours worked and could thus be excluded from the regular rate.

FOH § 32d05a(c). AMN argues that *Baouch* and *Gagnon* erred by focusing on the first sentence of the guidance rather than the second, which allows per diems to include partial payments for time away from home. But the second sentence permits an adjustment if the employee returns home or to the employer's place of business; it does not sanction an adjustment based on time worked while the employee is away from home on the employer's business. So both parts of the guidance are consistent in focusing on the substance or function of payments as payments for expenses incurred while away from home rather than on their form or label.

Plaintiffs urge us to embrace the per se rule that "[p]er diem payments that vary with the amount of work performed

are part of the regular rate." *Baouch*, 908 F.3d at 1116 (*citing Gagnon*, 607 F.3d at 1041–42; *Newman*, 749 F.3d at 35–37). But determining whether a per diem must be included in the regular rate of pay is a case-specific inquiry that turns on whether the payments function to reimburse employees for expenses or instead operate to compensate employees for hours worked. *See Baouch*, 908 F.3d at 1115. The fact that a payment varies with hours worked is a relevant factor in that determination, often a particularly relevant one. But, as we next explain, we readil0y conclude that, taking into account a number of factors, not solely their connection to hours worked, the per diem payments here function as wages rather than reimbursement for work-related expenses. We therefore need not determine whether per diem payments that vary with hours worked must *always* be included in the FLSA's regular rate.

**B.**

Several features of AMN's per diem payments make evident that they function as remuneration for hours worked rather than reimbursement for expenses.

First, under AMN's policies, the maximum weekly per diem benefits compensate employees for seven days of expenses. So AMN *already* pays clinicians a per diem for days they are not working for AMN. Reimbursing traveling clinicians for seven days of expenses even though most clinicians only work three days a week is justifiable because the clinicians are scheduled to work away from home for a prolonged period and are not expected to travel back and forth to their home base each week. *See* 29 C.F.R. § 778.217(b)(3). But it is also notable that AMN's prorating policy does not change depending on the clinician's reason for missing a shift. For example, under AMN's policy, a clinician too ill to work, and therefore not expected either to

work or to return to her tax home, would still be traveling and incurring expenses on AMN's behalf but would not receive per diem payments. The through line here is that AMN's pro rata deductions from its per diem payments are unconnected to whether the employee remains away from home incurring expenses for AMN's benefit. Instead, the deductions connect the amount paid to the hours worked while still away from home, thereby functioning as work compensation rather than expense reimbursement.

Second, clinicians are able to offset missed or incomplete shifts with hours they have "banked" on days or weeks in which they worked more than the minimum required hours. There is no plausible connection between working extra hours one week and incurring greater expenses the next. AMN offers no explanation for why "banked hours" should affect whether a clinician receives the maximum per diem payment during a week she works less than the minimum required hours. The only reason to consider "banked hours" in calculating a weekly per diem payment is to compensate employees for total hours worked, rather than for reasonable expenses incurred on days spent away from home for work.

The "banking hours" system also undermines AMN's justification for prorating the per diem payments, which the district court embraced in granting AMN's motion for summary judgment. The district court reasoned that because a clinician does not incur expenses for the benefit of AMN when she is not working, AMN properly prorates her weekly per diem payment when she misses a shift to avoid reimbursing her for "personal expenses." But neither the district court nor AMN explain how "banked hours" accumulated on days for which a clinician was already paid a per diem can transform a subsequent day that would have

been considered "personal" into a day for which AMN should reimburse the clinician's expenses.

Finally, and perhaps most tellingly, AMN pays local clinicians the same per diems it would if the clinicians were traveling. AMN explains that, unlike the traveling clinicians' per diems, which reimburse employees for expenses incurred for AMN's benefit, local clinicians' per diems function as wages and provide incentives for employees to work the minimum required hours. The district court acknowledged this feature of AMN's per diem payments but held that "the premise that non-traveling employees received the same fixed per diem is disputed" and that, anyway, "what other employees may or may not be paid does not change the underlying fact that traveling employees are receiving per diem payments that reasonably approximate travel costs incurred for the benefit of the employer."

The district court erred for two reasons. For one thing, the only disputed fact is whether local clinicians incurred travel-related expenses, not whether they received per diem payments. Whether local clinicians incur travel-related expenses is not a material fact. AMN treats local clinicians per diems as wages, *not* as reimbursement for any travel-related expense. Additionally, that local clinicians receive the same per diems they would if they were traveling even though they do not incur the same expenses—such as housing—is quite pertinent in evaluating the nature of the putative per diem payments made to travelling clinicians. AMN's explanation for the payments made to local clinicians—that providing per diems to local clinicians encourages them to work the required hours—applies equally to travelling clinicians, and confirms that the payments do function as compensation—namely, as a bonus for good work attendance. The comparison to local

clinicians' payments is an exceedingly strong indication that the per diem payments made to both groups of clinicians function as compensation for labor.

That both local and traveling clinicians receive per diems also supports Plaintiffs' assertion that these payments are expected as part of a clinician's pay package and so function as supplemental wages. In *Baouch*, the Eighth Circuit pointed to "seemingly obvious indicators that [the payments] function[ed] as a wage," including that the total pay of truck drivers enrolled in the program that provided payments based on miles driven was "suspiciously close to the taxable wage paid to non-participants." *Id.* at 1117.

In sum, a combination of factors—the tie of the per diem deductions to shifts not worked regardless of the reason for not working; the "banking hours" system; the default payment of per diem on a weekly basis, including for days not worked away from home, without regard to whether any expenses were actually incurred on a given day; and the payment of per diem in the same amount, but as acknowledged wages, to local clinicians who do not travel— together indicate that the payments functioned as compensation for hours worked.

## III.

AMN has failed to demonstrate that its per diems may be excluded from the FLSA's regular rate of pay under § 207(e)(2). We therefore **REVERSE** the district court's grant of summary judgment, and **REMAND** for the district court to enter partial summary judgment in Plaintiffs' favor as to whether the per diem payments to class member employees should be considered part of the employees' regular rate of pay and to conduct further proceedings.