Norma L. MATA, Plaintiff,

v.

**CARING FOR YOU HOME HEALTH, INC., et al., Defendants.**

Civil Action No. 7:13–CV–287.

United States District Court, S.D. Texas, McAllen Division.

Signed March 27, 2015.

Carlos E. Hernandez, Jr., Law Offices of Carlos E. Hernandez Jr., PC, Edinburg, TX, Cindy A. Garcia, The Law Offices of Cindy A. Garcia, Harlingen, TX, Michael Kevin Burke, Law Offices of Michael M. Guerra, Burke & Khirallah, LLP, McAllen, TX, for Plaintiff.

Katie Pearson Klein, William Daniel Mount, Jr., Dale Klein LLP, McAllen, TX, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

RANDY CRANE, District Judge.

Now before the Court is Plaintiff Norma Lee Mata's Renewed Motion for Summary Judgment, (Dkt. No. 56). Having considered the Motion, the record, the parties' responsive briefing, (Dkt. Nos. 58, 61–64), in light of the relevant law, and for the reasons articulated below, the Court is of the opinion that Plaintiff's Motion has merit and summary judgment should be GRANTED in favor of Plaintiff.

### I. Background

This is an employment case. Plaintiff is a home healthcare provider, or "attendant," employed by Defendant Caring For You Home Health, Inc. ("Caring for You"). Defendant Noemi Torre ("Torre") is the owner of Caring for You. Plaintiff filed the present action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, alleging that Defendants failed to pay her overtime compensation as required by the FLSA.

Defendants previously filed a Motion for Summary Judgment, which the Court denied. (Dkt. Nos. 20, 29). In her response, Plaintiff requested that the Court *sua sponte* grant summary judgment in her favor. (Dkt. No. 24 at 14). The Court declined to do so. (Dkt. No. 29). Since the Court's prior order, Plaintiff has taken depositions (the "Depositions") of Torre and Christel Vasquez ("Vasquez"), another Caring for You employee. Torre and Vasquez were designated by Caring for You as corporate representatives pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. After taking the Depositions, Plaintiff filed the instant motion, reurging her request for summary judgment. (Dkt. No. 56).

### II. Summary Judgment Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is

genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED.R.CIV.P. 56(a), (c). Where the movant bears the burden of proof, it must establish " 'beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor.' " *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; FED.R.CIV.P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Dean v. City of Shreveport,* 438 F.3d 448, 454 (5th Cir.2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 229 (5th Cir.2010); *see also Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir.2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

## III. Proposed Changes to Deposition Testimony

The Court will first address issues surrounding consideration of the deposition testimony of Torre and Vasquez and Defendants' proposed changes to such testimony.

Rule 30(e) of the Federal Rules of Civil Procedure provides deponents an opportunity to review the transcript or recording of their deposition and, if necessary, make "changes in form or substance" thereto. FED.R.CIV.P. 30(e)(1). The Rule places an affirmative duty on the deponent or a party to request such a review prior to the completion of the deposition. *Id.*

There is disagreement between the parties as to whether, prior to completion of the Depositions, Defendants or the deponents requested an opportunity to review and make changes to the deposition transcripts. *See* (Dkt. Nos. 61, 63). While the evidence before the Court tends to indicate that the deponents failed to comply with the requirements of Rule 30(e), it need not decide the issue due to the improper nature of the proposed changes to the deposition testimony.

■ Briefly, courts take three different approaches when a party challenges proposed substantive changes to deposition testimony pursuant to Rule 30(e). *Devon Energy Corp. v. Westacott,* 2011 WL 1157334 (S.D.Tex. Mar. 24, 2011) (collecting cases). The least restrictive approach allows substantive changes, but the prior testimony remains a part of the record and can be used for impeachment purposes. *See, e.g., Eicken v. USAA Fed. Savings Bank,* 498 F.Supp.2d 954, 961–62 (S.D.Tex. 2007). The most restrictive approach allows deponents to correct only typographic

and transcription errors. *See e.g., Trout v. FirstEnergy Generation Corp.,* 339 Fed. Appx. 560, 566 (6th Cir.2009). Other courts take a "sham affidavit" approach. *See, e.g., Hambleton Bros. Lumber Co. v. Balkin Entrs.,* 397 F.3d 1217, 1225 (9th Cir.2005). The Fifth Circuit has not announced its position with respect to the three approaches. This Court does not explicitly adopt any of the three various approaches except to hold that a party cannot use Rule 30(e) to make substantive, contradictory changes to deposition testimony, at least when supported only by *pro forma,* conclusory reasons such as "to clarify the record."

In the instant case, almost every "corrected answer" proposed by Defendants wholly contradicts the deponent's original answer and is supported only by insufficiently vague and conclusory reasons for the change. For example, when asked, "And that's the decision that you made. You're going to take the enhancement rate and pay that as salary to the attendants," Torre originally answered, "Yes." (Dkt. No. 61 at 3). To alter the record and change the answer to "No, as an enhancement," as Defendants would have the Court do, the proposed change must be supported by more than the proffered reason for the change: "To clarify the record." *See id.* It is clear that Defendants and the deponents have proposed changes to their deposition testimony solely in an attempt to create a fact issue and defeat summary judgment. This is not the purpose of Rule 30(e), and the Court will not consider the proposed changes.

## IV. Analysis—FLSA Claim

Section 207 of the FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess

of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). To establish a violation of Section 207, a plaintiff employee must show: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Resources (CVR), Inc.,* 758 F.3d 627, 630 (5th Cir.2014).

## A. Employer–Employee Relationship

Defendants do not dispute that an Plaintiff is an employee of Caring for You. *See* (Dkt. No. 7). The evidence on the record establishes as a matter of law that the requisite employer-employee relationship existed during the unpaid overtime periods claimed. *See Hopkins v. Cornerstone America,* 545 F.3d 338, 343 (5th Cir.2008). Plaintiff has, therefore, satisfied the first element of her FLSA claim.

## B. Activities Within the Coverage of the FLSA

The employee bears the burden of establishing entitlement to the FLSA's protections. *See Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.,* 474 F.3d 828, 829 (5th Cir.2007) (per curiam). To establish this, an employee must demonstrate that: (1) she personally engaged in commerce or the production of goods for commerce ("individual coverage") or (2) she worked for an enterprise engaged in such activity ("enterprise coverage"). *Martin v. Bedell,* 955 F.2d 1029, 1032 (5th Cir.1992). Plaintiff claims enterprise coverage applies in this case. (Dkt. No. 56 at 2–4). Enterprise coverage applies to an employer that: (1) "has employees engaged in commerce

... or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has an annual gross volume of business of at least $500,000.00. 29 U.S.C. § 203(s)(1)(A). "No *de minimis* rule applies to the Act; any regular contact with commerce, no matter how small, will result in coverage." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1124 (5th Cir. 1979).

■ Defendants do not appear to challenge the assertion that Plaintiff was entitled to enterprise coverage. Nonetheless, Plaintiffs have identified portions of Defendants' depositions where they admit that Caring for You's gross annual receipts exceeded $500,000 each year for which Plaintiff claims unpaid overtime. (Dkt. No. 56, Ex. 2 at 8). Additionally, Defendants admit that Caring for You has employed a minimum of two employees that regularly handle goods that have been moved in or produced in commerce as part of their employment.[1] *Id.* at 2–6. Defendants do not provide any evidence to create a question of fact as to whether Caring for You satisfies the requirements for enterprise coverage. Accordingly, Plaintiff has satisfied the second element of her FLSA claim.

## C. Violation of the FLSA's Overtime Wage Requirements

The parties do not dispute the amount Plaintiff was paid or the number of hours she worked. Both Plaintiff and Defendants rely on Defendants' prior summary judgment exhibit showing Plaintiff's pay stubs. (Dkt. No. 20–5). Plaintiff was paid semi-monthly at an hourly rate of $7.25, and later, $7.50. (Dkt. No. 20–2 at 3). Additionally, Plaintiff was paid a bonus "of roughly $1–2 per hour" every pay period.[2] *Id.* The only dispute is whether Plaintiff's bonus should be included in her regular rate for the purpose of determining her overtime compensation. A comparison of pay periods in which Plaintiff did not work overtime to pay periods in which she did will help illustrate the dispute, as well as demonstrate why Defendants' payment scheme violates the FLSA.

### 1. Regular, Non–Overtime Hours

For the pay periods in which Plaintiff did not work any overtime hours, her total remuneration was calculated by multiplying the number of hours worked times her hourly rate, plus a bonus. *See* (Dkt. No. 20–5). For instance, during her first pay period, ending on September 15, 2010, Plaintiff worked 39 regular hours and received $78.00 as a bonus. *Id.* at 2. Her total wages, then, amounted to 39 hours times her hourly rate of $7.25, plus $78.00, or $360.75. *Id.* Plaintiff notes that, when her bonus is included in her rate of pay, her total wages divided by the number of hours worked consistently equal $9.25 per hour for the pay periods from September

---

**1.** Plaintiff cites to portions of the deposition of Christel Vasquez, Rule 30(b)(6) deponent, where she admits that Caring for You's Licensed Vocational Nurses used the roadways and highways of Cameron and Hidalgo Counties; drove company cars that were Toyotas; and carried equipment and supplies ordered over the internet from Medline, an Illinois company. These regular contacts with commerce are sufficient to establish enterprise coverage under the FLSA. *See Marshall*, 603 F.2d at 1124.

**2.** Although the details are not entirely clear, some or all of the bonus is paid out of funds received by Caring for You through a state-run health program. (Dkt. No. 61–5 at 4–5). The bonus is variably referred to by the parties as either a "bonus" or an "enhancement."

15, 2010 through February 15, 2013.[3] (Dkt. No. 24 at 2, 4–6). For instance, in this same pay period, her total wages divided by the number of hours she worked, or $360.75 divided by 39 hours, equals a rate of $9.25 per hour. The same is true for *every* pay period in which Plaintiff did not work overtime hours from the time she began working on September 15, 2010 through February 15, 2013; Plaintiff's total wages divided by the number of hours worked *always* amounted to $9.25. *See* (Dkt. No. 20–5 at 2–15). Starting February 28, 2013, until the present, in every pay period in which Plaintiff has not worked overtime hours, her hourly rate including her bonus amounts to $9.05. (Dkt. No. 24 at 7). This rate did not change even after her raise from $7.25 per hour to $7.50 per hour on September 30, 2013. *See* (Dkt. No. 20–5 at 17).

## 2. Overtime Hours

When Plaintiff worked overtime hours, Defendants explain that her overtime pay:

> is calculated by dividing the total bonus for the pay period by the number of regular or non-overtime hours to reach the bonus hourly rate. The bonus hourly rate is then added to the regular hourly rate to determine the overall hourly rate. The overall hourly rate is then multiplied by 1.5 to determine the overtime rate. The overtime rate is then multiplied by the number of hours, if any, over 40 hours a week worked by the provider.

(Dkt. No. 20–2 at 3). Essentially, Defendants assert that Plaintiff's overtime rate

was actually calculated at one and one-half times a rate *higher* than her hourly rate. For instance, during the pay period ending on June 1, 2011, she worked 85.25 regular hours, 17.25 overtime hours, and was given a bonus of $109.35. (Dkt. No. 20–5 at 5–6). Her total wages amounted to 85.25 regular hours times her hourly rate of $7.25, plus 17.25 overtime hours times one and one-half times a higher hourly rate of $8.53, plus her bonus of $109.35, or $948.12. *Id.* Plaintiff notes, however, that her total wages in that pay period, $948.12, divided by the total number of hours she worked, 102.5 hours, equals, again, $9.25 per hour, even though this pay period supposedly includes a $220.71 overtime premium. (Dkt. No. 24 at 6). The same is true for every pay period in which Plaintiff worked overtime hours, from the time she began working on September 15, 2010 through February 15, 2013, with the exception of one pay period.[4] *See* (Dkt. No. 20–5). Then, beginning with the pay period ending on February 28, 2013, Plaintiff's total wages divided by the total number of hours worked, regardless of overtime hours, amount to $9.05 per hour, with the exception of one pay period.[5] *See id.*

Despite Defendants' alleged overtime premium, Plaintiff's total wages per hour did not change even when she worked overtime. Compare, for instance, the pay periods ending on August 31, 2012 and November 1, 2012. For the August 31 pay period, she worked 104.75 regular hours with no overtime and received total wages of $968.94. (Dkt. No. 20–5 at 12). For the

---

3. Plaintiff acknowledges that the pay period ending on November 30, 2012 inexplicably resulted in a different rate of $9.18 an hour. (Dkt. No. 24 at 6 n. 6).

4. Plaintiff's rate for the pay period ending on November 30, 2013 was $9.18 an hour. *See* (Doc. 20–5 at 13). The total wages in this

period are not the result of Defendants' stated formula, either.

5. Plaintiff's rate for the pay period ending on January 15, 2014 was, inexplicably, $8.61 an hour. *See* (Doc. 20–5 at 20). Again, the amount of total wages does not follow from Defendants' formula either.

November 1 pay period, she worked 89 regular hours and 15.5 overtime hours, or a total of 104.5 hours, and received total wages of $966.63. *Id.* at 13. Although Plaintiff worked substantially more overtime hours in the November 1 pay period but a nearly identical number of total hours, her total compensation was slightly less than the August 31 pay period.

Neither party disputes these numbers. Rather, their disagreement focuses on whether Plaintiff's bonus should be included in calculating her regular rate of pay. Without the bonus, Defendants have demonstrated that they complied with the FLSA because Plaintiff's overtime pay is more than one and one-half times her hourly rate. If the bonus is included, however, Plaintiff has demonstrated that Defendants did not comply with the FLSA because her overtime rate is the same as her regular rate. The Court finds that the bonus should be included in Plaintiff's regular rate.

3. Regular Rate

Section 207 of the FLSA provides, in relevant part:

> [T]he "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include ... [s]ums paid in recognition of services performed during a given period if ... both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments[.]

29 U.S.C. § 207(e)(3).

■ The law is clear that the regular rate "cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee," *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 464, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948); instead, "courts are required to look beyond that which the parties have purported to do" and find "the hourly rate *actually* paid for the normal, non-overtime workweek." *149 Madison Ave. Corp. v. Asselta,* 331 U.S. 199, 204, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947) (emphasis added) (citations omitted).

The instant case is similar to *Gagnon v. United Technisource, Inc.,* 607 F.3d 1036 (5th Cir.2010), in which the Fifth Circuit found an employer's pay scheme violated the FLSA. In *Gagnon,* the employer paid the plaintiff a very low hourly rate plus a higher "per diem" that was based on the number of hours worked, but the employer only paid overtime at one and one-half times the low hourly rate. *Gagnon,* 607 F.3d at 1039. Even though the employer's plan appeared to comply with the FLSA because the employee was paid at one and one-half times his hourly rate, the court found the "per diem" should have been included in the employee's regular rate, and so his overtime payments should have been based on the hourly rate and per diem, together. *Id.* at 1042. The court noted that the case was "analogous to other cases in which employers have sought to artificially lower an employee's regular rate by mischaracterizing a portion of it as a bonus." *Id.*

■ Here, despite Defendants protestations that the bonus was discretionary, never promised to Plaintiff, and therefore should be excluded from the regular rate by Section 207, the evidence before the Court establishes otherwise. First, Torre admits in her deposition that she promised the Caring for You attendants that they would receive the bonus as part of their wages. (Dkt. No. 56, Ex. 5 at 9–11).

Torre also testified that the attendants did not have to do anything beyond work their hours to receive the bonus. *Id.* at 12. Finally, Torre admits, unequivocally, that if the attendants "worked the hours[,] they were going to get the enhancement as part of their wage." *Id.* at 12.

Defendants offer additional portions of Vasquez's and Torre's depositions in an attempt to show that the bonus is discretionary. *See* (Dkt. No. 61 at 7–16). Primarily, Defendants argue that money received from a certain state health program, of which apparently at least a portion goes to pay Plaintiff's bonus, could have been used to pay for health insurance or other benefits for Plaintiff and the other attendants. *Id.* The evidence falls short of creating a fact issue, however. Even when considered in a light most favorable to Defendants, their argument establishes *at best* that they had discretion whether to pay a bonus to the attendants *at one point in time.* The fact is that Defendants made the decision to pay a bonus to their attendants as part of their wages and communicated that decision to them. In doing so, Defendants lost the requisite discretion to properly classify it as a bonus excluded from the regular rate. *See* 29 C.F.R. § 778.211(b) ("If the employer promises in advance to pay a bonus, [she] has abandoned his discretion with regard to it.").

Based on the evidence before the Court, no rational jury could find that Defendants did not violate the FLSA overtime wage requirements. Plaintiff's regular rate for purposes of the FLSA is determinable as a matter of law: $9.25 per hour from the beginning of Plaintiff's employment in September of 2010 until the pay period ending on February 15, 2013 [6]; and $9.05 per hour from the pay period ending on February 28, 2013 until this suit was filed. These amounts represent how much Defendants *actually* paid to Plaintiff in her regular, non-overtime work week. Because Defendants did not pay Plaintiff at least one-and-one-half times these amounts for the hours Plaintiff worked in excess of forty hours, they failed to comply with the FLSA. Accordingly, Plaintiff has satisfied the third element of her FLSA claim.

## D. Compensation Owed to Plaintiff

▮ Finally, plaintiff must show "the amount of overtime compensation due" to her. *Heckmann Water,* 758 F.3d at 630. Here, as indicated above, there is no dispute as to the hours Plaintiff worked or the amount of payment she received. Accordingly, the amount of unpaid overtime compensation due to her is determinable as a matter of law, and Plaintiff has satisfied the fourth element of her FLSA claim.

Between the beginning of Plaintiff's employment with Caring for You and the pay period ending on February 15, 2013—excluding the pay period ending on November 30, 2012—Plaintiff worked 487 overtime hours. During this time, her regular rate was $9.25 per hour. Accordingly, Plaintiff should have been paid $2,252.37 in overtime compensation. This amount is equal to 487 hours times one-half her regular rate.

Between the pay periods ending on February 28, 2013 and the pay period ending on April 15, 2013, Plaintiff worked 53.25 overtime hours. During this time, her regular rate was $9.05 per hour. Accordingly, Plaintiff should have been paid $240.96 in overtime compensation. This

---

**6.** With the exception of the pay period ending on November 30, 2012, where Plaintiff's regu-

lar rate was $9.18.

amount is equal to 53.25 hours times one-half her regular rate.

For the pay period ending on November 30, 2012, Plaintiff worked 23 overtime hours. During this pay period, her regular rate was $9.18. Accordingly, Plaintiff should have been paid $105.54 in overtime compensation. This amount is equal to 23 hours times one-half her regular rate.

Based on the above calculations, the total unpaid overtime compensation equals $2,598.87.

### E. Section 259 Defense

As discussed above, Plaintiff has satisfied all four elements of her FLSA claim as a matter of law. Defendants, however, assert a defense under 29 U.S.C. § 259 that, if proved, would serve to bar any recovery by Plaintiff. Section 259 provides, in relevant part:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay . . . overtime compensation under the Fair Labor Standards Act of 1938, as amended . . . , if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [the Administrator of the Wage and Hour Division of the Department of Labor] . . . or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.

29 U.S.C. § 259(a). Section 259 "was designed to protect employers from liability if they took certain actions on the basis of an interpretation of the law by a government agency, even if the agency's interpretation later turned out to be wrong." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir.2003) (citing *EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir.1982)).

Defendants argue that they received guidance from the Department of Labor at some point in 2003 "to begin calculating the enhancement as part of the base rate for overtime[, and] thereafter began adding the enhancement as part of the base rate to calculate overtime. . . ." (Dkt. No. 58 at 6). It is this guidance that Defendants believe relieve them of any liability for a failure to pay overtime compensation. *See id.* The evidence before the Court, however, shows that these communications from the Department of Labor do not satisfy the requirements of a Section 259 defense.

Torre testified in her deposition that the Department of Labor performed an audit around 2003 and determined that Caring for You was not properly paying overtime to some of its employees. (Dkt. No. 56, Ex. 5 at 2–8). Caring for You was paying its employees a certain rate above minimum wage for their first 40 hours of work and then paying overtime at a rate of one-and-a-half times minimum wage. *Id.* She stated that Caring for You received two items in writing from the Department as a result of the audit. *Id.* The first was a list of employees that had not received proper overtime compensation and the amount owed to those employees. *Id.* at 7. The second writing was a letter from the Department that Defendants received after they paid the employees the overtime compensation they were owed. *Id.* In short, the Department told Defendants "okay, you paid the amount we said you owed, we're done. . . ." *Id.* at 8. On their faces, neither of these constitutes a "written administrative regulation, order, ruling, approval, or interpretation" on which a Section 259 defense could be based.

Defendants do not point to any other writings or administrative practices or enforcement policies on which their defense

could be based, but rely solely on the fact that they received two letters from the Department of Labor. *See* (Dkt. No. 58 at 6–7). Torre's testimony, however, at best establishes that the letters notified Caring for You that they could not calculate overtime based on a rate lower than that paid for regular, non-overtime hours. This is simply not the type of "written administrative regulation, order, ruling, approval, or interpretation" envisioned by § 259. Additionally, other than changing the labels of the rates paid, there is no evidence that Defendants actually changed the way they paid overtime in reliance on these letters. There is no question of fact for trial with regard to this matter; Defendants' Section 259 defense fails as a matter of law.

## F. Damages

### 1. Statute of Limitations

The statute of limitations for a cause of action for unpaid overtime compensation under the FLSA is two years, except if the violation is "willful," in which case the statute of limitations is three years. 29 U.S.C. § 255(a). A cause of action under the FLSA accrues at each regular payday immediately following the work period during which the services were rendered for which the overtime compensation is claimed. *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir.1987).

This suit was filed on June 10, 2013. (Dkt. No. 1). Accordingly, any claims for unpaid overtime compensation that accrued prior to June 10, 2011 are barred by limitations unless Defendants' violation was willful—in which case the limitations date would be June 10, 2010. Plaintiff began working at Caring for You in September of 2010, and prior to June 10, 2011, she worked overtime in only two pay periods. (Dkt. No. 20–5). In those pay periods, Plaintiff worked 27 overtime hours at a regular rate of $9.25. *Id.* Thus, if Defendants' violation was *not* willful, Plaintiff's amount of recoverable unpaid overtime must be reduced to exclude these hours.

"Violations under the FLSA are willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir.1994) (internal citations and quotations omitted). Here, Defendants admit that the Department of labor informed them in 2003 that they were not paying overtime in a matter that complied with the FLSA. (Dkt. No. 56, Ex. 5 at 2–8). Construing the facts in a light most favorable to Defendants, Defendants *at least* knew that they were not permitted to pay one rate for the first 40 hours of work and then pay overtime based on a lower hourly rate. *See* (Dkt. No. 56, Ex. 5 at 2–8). Although Defendants attempted to change the labels and classify a portion of Plaintiff's wages as a bonus, this is precisely how Defendants paid Plaintiff.

Defendants paid Plaintiff $9.25 or $9.05 per hour for her first 40 hours of work and then paid overtime based on an hourly rate less than that amount. *See* (Dkt. No. 20–5). The "overtime rate" varied depending on the number of overtime hours worked, but equaled an amount that would allow Plaintiff's total compensation to equal $9.25 or $9.05 times the total number of hours she worked. (Dkt. No. 20–5). Defendants did not seek guidance from the Department of Labor. (Dkt. No. 56, Ex. 2 at 9–10). Defendants did not seek the advice of an attorney. *Id.* at 10. In fact, Defendants did not seek guidance or advice from any third party regarding whether their pay scheme complied with the FLSA. *Id.* at 12. When pared down it the roots, Defendants were informed that their pay scheme was not in compliance with the FLSA, they changed the way they

labeled rates on their paystubs, and then continued doing what the Department of Labor told them they could not do. *At best*, these facts demonstrate that Defendants acted with reckless disregard for the matter of whether its conduct was prohibited by the FLSA. Accordingly, the Court finds that Defendants' violations were willful as a matter of law. As a result, the applicable statute of limitations is three years, and Plaintiff can recover all of her claimed unpaid overtime compensation.

### 2. Liquidated Damages

Section 216 of the FLSA, which provides for damages, states in relevant part, "Any employer who violates the provisions of [29 U.S.C. § 207] shall be liable to the employee ... affected in the amount of [her] ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). As discussed above, Plaintiff is entitled to $2,598.87 in unpaid overtime compensation. Generally, under Section 216 then, Plaintiff would be entitled to an additional $2,598.87 in liquidated damages. *Id.* The Court may sometimes, however, in its discretion, reduce or eliminate the award of liquidated damages. 29 U.S.C. § 260. Defendants argue that the Court should so exercise its discretion and not award liquidated damages. (Dkt. No. 61 at 16–18).

■■■ Section 260 states, in relevant part:

> In any action ... to recover ... unpaid overtime compensation ... under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discre-

tion, award no liquidated damages or award any amount thereof not to exceed the amount specified [29 U.S.C. § 216].

29 U.S.C. § 260. Because liquidated damages are prescribed as the norm by Section 216, the employer bears the "substantial burden" to demonstrate "good faith and a reasonable belief that its actions did not violate the FLSA." *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir.1998). Additionally, the Court retains discretion to award liquidated damages, even if an employer shows good faith. *Id.*

■■■ Defendants argue that they "acted with subjective good faith and had objectively reasonable grounds for believing they were in compliance with the FLSA." (Dkt. No. 61 at 17–18). In support of their position they point to Vasquez's testimony regarding the Department of Labor audit and Caring for You's use of an accountant, as well as Torre's declaration that Caring for You complied with the Department of Labor's directives. *Id.*; (Dkt. No. 58, Ex. 1). The Court finds this argument unavailing.

As discussed above, the Court finds that Defendants' violation was willful. The evidence before the Court makes it clear that Defendants had a set amount per hour they wanted to pay Plaintiff—$9.25 and $9.05—regardless of whether or not she worked overtime. Defendants then worked backwards using this amount to determine the proper "bonus" to pay that would allow them to show on the paystubs that Plaintiff was receiving one-and-a-half times a certain rate for overtime hours she worked. Defendants no doubt expended considerable effort to give the *appearance* that their pay scheme complied with the FLSA overtime requirements, however, it cannot be said that their actions were in good faith or objectively reasonable. Accordingly, their § 260 defense fails, and

liquidated damages are appropriate in this case.

### G. Attorney's Fees and Costs

In addition to providing for liquidated damages, Section 216 also states, "[T]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216. Having found that Defendants violated Section 207, the Court awards Plaintiff reasonable attorney's fees and costs.

### V. Conclusion

For the reasons discussed above, the Court finds that there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law.

It is, therefore, **ORDERED,** that Plaintiff's renewed Motion for Summary Judgment, (Dkt. No. 56), is hereby **GRANTED.**

It is **FURTHER ORDERED** that Plaintiff is awarded actual and liquidated damages in the amount of $5,197.74, payable by Defendants Caring For You Home Health, Inc. and Noemi Torre.

It is **FURTHER ORDERED** that Plaintiff is awarded reasonable attorney's fees and costs of court payable by Defendants. Plaintiff's counsel shall have until April 17, 2015 to file appropriate affidavits documenting fees and costs. Any response should be filed within 10 days thereof.

A separate final judgment will issue after the Court determines the amount of reasonable attorney's fees and costs Plaintiff is entitled to recover.

All relief requested and not expressly granted is hereby denied. All other pending motions are hereby **DENIED AS MOOT.**