# United States Court of Appeals
## For the First Circuit

No. 16-1520

DUKES BRIDGE LLC,

Plaintiff, Appellant,

STANLEY MILLER, Trustee of the
TPCS Corporation Irrevocable Life Insurance Sub-Trust,

Plaintiff,

v.

GILBERT D. BEINHOCKER,

Defendant, Appellee,

LEONARD PHILLIPS, Individually and as Trustee of the
TPCS Corporation Irrevocable Life Insurance Trust,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Circuit Judge,
Souter, Associate Justice,*
and Selya, Circuit Judge.

Shawn R. Farrell, with whom Cohen Seglias Pallas Greenhall
& Furman, P.C., was on brief, for Dukes Bridge LLC.

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

John P. Connelly, with whom Robert T. Ferguson, Jr., and Hinckley, Allen & Snyder LLP were on brief, for Gilbert D. Beinhocker.

May 8, 2017

**Souter, J.**   Dukes Bridge LLC, a plaintiff in this action for breach of contract, appeals the district court's grant of summary judgment to defendant Gilbert D. Beinhocker. We reverse and remand.

## I.

The maze of detail in this transaction is lucidly organized in the district court's opinion, but a limited recitation of facts suffices for purposes of the appeal. Beinhocker entered into the contract in question as one element of a transaction to raise capital for his flailing business and income for himself.   The dealings among the parties involved Beinhocker's purchase of a multi-million dollar life insurance policy on his own life, to be held in trust for the two years during which the insurer could contest the representation in his policy application, then sold by the insurance broker to a third party for a profit to Beinhocker, among others.   As he lacked the wherewithal to pay the policy premiums prior to the anticipated sale, he obtained financing from a lender, Aqua Blue Wealth Management, LLC, Dukes Bridge's predecessor in interest.

The several documents structuring the transaction included a "Specialty Finance Loan Agreement," providing that the lender would pay two years of the life insurance policy's premiums.   A trust was formed with Beinhocker's business partner, Leonard Phillips, as trustee, and a sub-trust, whose

trustee was the plaintiff Stanley Miller.  The actual borrower under the Loan Agreement was the sub-trust, which held the life policy as collateral for the lender's protection.

As it concerns this appeal, the Loan Agreement included a non-recourse provision, that in case of default the obligations to the lender under the agreement could be satisfied only from the collateral policy.[1]  It expressly protected Beinhocker:

> Notwithstanding any other provision of this Specialty Finance Loan Agreement or any other Loan Documents, Lender agrees that under these Loan Documents there are not any circumstances, including but not limited to the recourse obligations of the Borrower [Sub-Trust], under which . . . Beinhocker will personally be responsible for any obligations owed to the Lender . . . or the Insured's [Beinhocker's] assets will be subject to any claims, liens or judgments of the Lender or any affiliates of the Lender.

The same day the Loan Agreement was executed, Beinhocker, Phillips, and Miller entered into a "Non-Contravention Agreement," with the stated purpose of "induc[ing]" the lender to "enter into the Loan Agreement."  The Non-Contravention Agreement provided that Beinhocker would not "contravene or take any action that will cause an event of

---

[1] A second such clause is arguably of more limited scope, on the basis of which Dukes Bridge argues its inapplicability to a violation of the Non-Contravention Agreement, described below. Given our conclusion that the relevant terms of that agreement control on the issue of Beinhocker's personal liability, there is no reason to delve into this issue.

- 4 -

default under the Specialty Finance Loan Agreement or any other contract, understanding, or commitment described in the Loan Documents."  Beinhocker would not "pledge, assign . . . , or otherwise dispose of, or encumber with any Lien, the [life insurance policy] without the prior, written consent of [Miller]."  Nor would Beinhocker "make any withdrawals from or obtain any policy loans against the" policy without Miller's consent.  Beinhocker agreed to hold the lender "harmless" against, and to "reimburse" it for, "any and all loss, liability, or damage resulting from any breach or non-fulfillment" of the Non-Contravention Agreement by Beinhocker, and for any "assessments, judgments, out-of-pocket costs and expenses, including without limitation, legal fees and expenses incident to" such breach.

With these agreements in place, the original lender paid the first-year premium on the life insurance policy, as well as part of the second year's.  Before the lender completed the second-year payments, however, Beinhocker became nervous. He worried that his insurance broker would have difficulty finding a buyer for the policy, and would end up selling it to "any anonymous party in Russia or Asia" who "would have a $10 million incentive to have [him] anonymously assassinated."  To assuage his fears, Beinhocker decided to sabotage the scheme. Unbeknownst to Miller, he requested Phillips to take out a

$200,000 loan against the life insurance policy, the amount they had hoped to realize on its eventual sale. Phillips did so, with the ultimate effect of causing the policy to lapse, dismantling the entire arrangement.

Dukes Bridge (which by this time had succeeded to Aqua Blue's position under the loan contract) then brought this action against Beinhocker, alleging that in causing the $200,000 loan to be taken out against the life insurance policy, he had violated the Non-Contravention Agreement, resulting in damages to the lender.[2] Each side moved for summary judgment. The district court found there was no question about Beinhocker's breach of the Non-Contravention Agreement but that he was immune from liability under the quoted non-recourse provision in the Loan Agreement. Accordingly, it entered summary judgment for Beinhocker on the breach of contract claim. Dukes Bridge LLC v. Beinhocker, No. 10-10877-DPW, 2012 WL 4324919, at *7-9 (D. Mass. Sept. 19, 2012).

---

[2] Dukes Bridge and Beinhocker are not the only parties to the action. Miller, too, is a plaintiff, and Phillips a defendant. The district court entered summary judgment against Miller, on the ground that he cannot show damages from any breach of the Non-Contravention Agreement. Dukes Bridge LLC v. Beinhocker, No. 10-10877-DPW, 2012 WL 4324919, at *7 (D. Mass. Sept. 19, 2012). The district court entered summary judgment against Phillips on Dukes Bridge's claim that Phillips, like Beinhocker, breached the Non-Contravention Agreement. Id. at *8-9. Neither of those judgments is at issue on appeal.

Before this court, Dukes Bridge assigns error to the district court's application of the non-recourse provision in the Loan Agreement to immunize Beinhocker from liability. Dukes Bridge submits that no genuine issue of material fact remains, that the district court's entry of summary judgment for Beinhocker should be vacated, and that summary judgment should be entered in its own favor instead.

## II.

Our review of the district court's summary judgment for Beinhocker is de novo, Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016), as is our examination of its interpretation of the contracts in question, C.A. Acquisition Newco, LLC v. DHL Express (USA), Inc., 696 F.3d 109, 112 (1st Cir. 2012). We follow the parties' lead and apply the substantive law of Massachusetts to the contract-law issues raised in this diversity action. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).

The principal issue raised by Dukes Bridge's appeal requires resolution of the conflict between the previously quoted non-recourse provision in the Loan Agreement and the liability provisions of the Non-Contravention Agreement, each of them executed as an element of the single loan transaction.[3] As

---

[3] We note Beinhocker's threshold argument that Dukes Bridge lacks standing to respond to the merits of this appeal, owing to its

- 7 -

noted, the Loan Agreement was between Dukes Bridge's assignor as lender and Miller, the sub-trustee. Though Beinhocker was not a signatory, he was obviously intended to be a third-party beneficiary of the non-recourse clause relied upon by the district court, and thus able to plead the clause as a defense to liability where it applies.

We agree with the district court that it would apply here if judged by its terms alone. The "[n]otwithstanding" provision purports to place it in a superior position to any source of obligation Beinhocker might incur to the lender under the Loan Agreement "or any other Loan Documents." "Loan Document" is defined in the Loan Agreement to include "all . . . agreements . . . executed by the requisite Person(s) . . . in connection with any of the foregoing [documents, which include the Loan Agreement] and accepted . . . by the Lender." Like the district court, we understand the Non-Contravention Agreement to have been executed in connection with the loan and "accepted" by Dukes Bridge's assignor, given the obvious object of the

disclosure that it has assigned its interest in the verdict to a third party, MLSF LLC (not before the court). This position is insufficiently substantial to call for extended examination. Under Federal Rule of Civil Procedure 25(c), a party's standing is determined by its position at commencement of the action, when Dukes Bridge had not yet made the assignment. Although Dukes Bridge moved to substitute MLSF LLC for itself in the district court, the record indicates that Beinhocker opposed the motion, which was not ruled upon, supposedly because of a fact issue the court chose not to resolve in view of the judgment in Beinhocker's favor. The motion may be addressed on remand.

protection it provided to the lender and its express statement that it was executed as inducement for the loan.

We part company with the district court, however, over its assumption that the clear facial applicability of the non-recourse clause is sufficient without further enquiry to negate Beinhocker's exposure to liability to the lender under the Non-Contravention Agreement. That agreement's emphatic centrality to the complex transaction cannot be doubted. It was obviously meant to guard against an act by Beinhocker that would sabotage the overall transaction in favor of an immediate benefit to him. Neither is there any uncertainty about its contemplated applicability to the action of obtaining the loan against the life insurance policy without Miller's consent, or about the effect of that forbidden act in frustrating the entire transaction and leaving the lender with the loss from which Beinhocker had agreed to hold it harmless. Beinhocker freely admits the breach of his agreement, and its consequences, as just what he intended in order to obtain immediate cash and eliminate the jeopardy to his life. There is, in sum, no question that application of the non-recourse clause here leaves Beinhocker's Non-Contravention Agreement a nullity as of the moment he signed it as an inducement for the necessary loan.

To leave the matter there would exemplify a resolution of conflicting contractual provisions that we conclude the law

of Massachusetts would not condone. The key to determining which provision should prevail here is the rule that in construing contractual terms they must be read as a whole and every one given effect so far as possible. See J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 378 (Mass. 1986) ("A contract is to be construed to give reasonable effect to each of its provisions."); see also Balles v. Babcock Power Inc., 70 N.E.3d 905, 916 (Mass. 2017) (citing J.A. Sullivan for the proposition that a court should not "read [a] provision" out of a contract); Restatement (Second) of Contracts § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."). The courts of Massachusetts recognize that rule in circumstances like those here, when a transaction is structured through multiple contracts. See Chelsea Indus., Inc. v. Florence, 260 N.E.2d 732, 735 (Mass. 1970) ("The two contracts were part of a single transaction. In construing them, weight must be given to that circumstance."); see also Wilmot H. Simonson Co. v. Green Textiles Assocs., 755 F.2d 217, 219 (1st Cir. 1985) (same) (quoting Chelsea Indus.). That tenet of the Commonwealth's law may readily be applied here to allow for the application of each provision, owing to the range of facts that could produce the damages alleged by the lender.

Consider first the possibility that the sub-trustee-borrower might default so as to cause loss and reduce or destroy the value of the collateral policy without any participation by Beinhocker, or even knowledge on his part. A change of residence to Tahiti financed by loan proceeds might successfully tempt a susceptible trustee, for example. If it did so without any involvement by Beinhocker, there is no apparent argument against applying the non-recourse provision to protect him from a claim by the lender. But in the circumstance that Beinhocker himself causes loss to the lender by violating the Non-Contravention Agreement, it is likely that the parties to the transaction would have understood that the hold-harmless terms of that agreement would and should prevail, subjecting Beinhocker to liability.

This resolution of the facial conflict by recognizing reasonable spheres of respective applicability gives effect to each set of terms and gives the parties and the drafters of the documents credit for coherent thinking. See Stop & Shop, Inc. v. Ganem, 200 N.E.2d 248, 251 (Mass. 1964) ("Justice, common sense and the probable intention of the parties are guides to construction of a written instrument."); see also Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001) (stating, in interpreting a contract subject to Massachusetts law, that "[c]ommon sense is as much a part of contract interpretation as

is the dictionary or the arsenal of canons").  We accordingly hold the terms of the Non-Contravention Agreement entitled to apply on the facts of this case, without nullification by the Loan Agreement's non-recourse clause.

                              III.

        The judgment for Beinhocker is **reversed** and the case is **remanded** for reconsideration of Dukes Bridge's motion for summary judgment and its motion to substitute MLSF LLC in its place.  Costs shall be taxed in favor of Dukes Bridge.