# United States Court of Appeals
## For the First Circuit

No. 17-1157

H. LEE FARTHING,

Plaintiff, Appellant,

v.

COCO BEACH RESORT MANAGEMENT, LLC,

Defendant, Appellee,

JOHN DOE, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Richard Schell-Asad and Troncoso & Schell on brief for
appellant.
Alejandro Suárez Vincenty, Hugo Rodríguez Díaz, and Rodríguez
& Rodríguez, PSC on brief for appellee.

July 21, 2017

**LYNCH**, **Circuit Judge**.  H. Lee Farthing, a South Carolina resident, brought this diversity suit against Coco Beach Resort Management, LLC ("Coco Beach"), a Puerto Rico company that employed Farthing for just over three months on a one-year contract as its "Marketing and Sales Director."  Farthing alleges that Coco Beach breached his employment agreement by unilaterally terminating it early.  He seeks damages to compensate him for unpaid base salary and anticipated commissions on real estate sales that Farthing alleges were imminent when Coco Beach fired him.

The court below granted Coco Beach's motion for summary judgment, holding that the employment agreement was void as against public policy because Puerto Rico law requires a person working as a real estate broker to have a license.  It is undisputed that Farthing had no such license before or after he was employed, and that no term of the employment agreement required him to have such a license.

We vacate and remand.  Summary judgment was entered in error because issues of law and issues of material fact remain in dispute.  It is disputed whether Coco Beach was aware that Farthing did not have a broker's license at any relevant time, including when the agreement was signed, and it is disputed whether at least some of the work Farthing performed and was intended to perform was permissible without a broker's license.  It was error to hold

on summary judgment that Farthing has no viable claim against Coco Beach for breach of contract.

I.

We briefly review the relevant background, highlighting along the way the facts that remain in dispute.

Under Puerto Rico law, it is a misdemeanor to "engage[] in the profession of real estate broker . . . without the corresponding license."  P.R. Laws Ann. tit. 20, § 3057(a).  "Real estate broker" is defined by statute as

> [a] natural person who holds a license to practice the profession . . . and acts as intermediary, through the payment or the promise of payment of any compensation previously and mutually agreed upon between the parties that contract to execute in Puerto Rico a sales transaction, promise of sale, purchase or sale option, exchange, lease, auction, property management, or in the offering, promotion, or negotiation of the terms of all sales, sales options, promise of sale, lease management, or exchange of real property located in or outside of the Commonwealth of Puerto Rico.

Id. § 3025(g).[1]  The parties agree that Farthing, at all relevant times, has lacked the license required to work as a real estate broker in Puerto Rico.

---

[1]    Farthing alleges that there are "discrepancies" between this translation of § 3025(g), drawn from online databases, and the official translation that accompanied the provision's legislative enactment.  We need not decide which translation is more accurate.  The minor differences between them are not pertinent to this opinion.

Farthing alleges that, in the past, he was employed in South Carolina as a "real estate broker with an expertise in 'high end' or 'luxury resorts.'" On March 24, 2016, he signed a one-year employment agreement with Coco Beach; the agreement had no early termination clause and no requirement that Farthing obtain a Puerto Rico real estate broker's license. Farthing, in a sworn affidavit, alleges that Coco Beach's president knew when he hired Farthing that Farthing was not a licensed real estate broker in Puerto Rico and that he "specifically told [Farthing] that under Puerto Rico's law [Farthing] did not need a real estate license, as [Farthing] would be an employee of Coco Beach selling [Coco Beach's own] property." Coco Beach disputes that allegation and maintains that it "did not have knowledge that [Farthing] did not have a real estate license nor that [a license] was required," because Coco Beach "was inadequately informed and advised" at that time.

Per the employment agreement, Farthing's job title was "Marketing and Sales Director." In that capacity, Farthing led Coco Beach's Marketing and Sales department, which consisted of Farthing and Rosselyn Pérez, who mainly performed secretarial work for Farthing. The parties agree that Farthing's responsibilities included "identify[ing] potential buyers" for units in the Las Casas apartment complex and "offer[ing], promot[ing] and negotiat[ing] with [potential buyers] options and sale agreements

- 4 -

o[n] behalf of Coco Beach." Farthing alleges that his job also included several other responsibilities, including "[h]iring real estate brokers," meeting with bank officials to discuss financing, following up on inquiries and potential clients, negotiating with venues that might host a "sales concierge" space at which Coco Beach would recruit buyers for the Las Casas units, and contacting brokers in the United States for assistance in promoting the Las Casas units.

Coco Beach alleges by affidavit that the Las Casas units are managed and operated by Coco Beach but that the units are owned by a different company, O'Horizons LLC. Farthing's complaint, by contrast, alleges that the Coco Beach Golf Club, which contains the Las Casas units, is "own[ed] and operate[d]" by "Coco Beach and/or John Doe, Inc." In his opposition to Coco Beach's motion for summary judgment, Farthing stated that "Las Casas is property of Coco Beach, not owned by any third party." The record does not clear up this confusion.

Coco Beach terminated Farthing's employment in late June, 2016. The parties disagree on several details of the circumstances of Farthing's termination. In Farthing's account, Coco Beach unilaterally terminated the agreement. On June 28, Farthing alleges, Coco Beach's president told Farthing that he "had done an amazing job and accomplished more than [Coco Beach] had ever hoped for," but that Coco Beach was "letting [Farthing]

go because [Coco Beach] had decided not to sell real estate and to start selling timeshares [at Las Casas] instead." Coco Beach admits that its president made these statements to Farthing.

On June 29, Farthing further alleges, he was offered two weeks' severance pay in exchange for agreeing not to pursue any claims against Coco Beach, but he did not accept the offer.

In support of its motion for summary judgment -- at least on its affirmative defense of accord and satisfaction -- Coco Beach submitted sworn statements from Rafael Rovira Ronda, O'Horizons LLC's Vice President of Real Estate, and from John W. Wilson Gomez, Coco Beach's Operations Director. Each statement alleges that Coco Beach offered Farthing a termination agreement, effective June 30, 2016, which "consisted of liquidating any unpaid salaries up to June 30[] . . . plus a severance equivalent to two . . . additional weeks of his base salary." Each statement also alleges that Coco Beach agreed to pay Farthing a commission on the sale of Unit 401G in the Las Casas complex, per the compensation formula in the employment agreement, if that sale were ever finalized; that Farthing "expressly accepted and agreed to the termination agreement" on those terms; that Farthing was handed a check for $6750.40, "for [his] services rendered up to that date"; that Farthing agreed to return to Coco Beach's offices on July 5, 2016 to collect the agreed severance; and that Farthing never returned.

Neither party alleges that Farthing's lack of a broker's license was the reason for terminating the agreement or that it was stated as the reason. The record shows that Coco Beach first alleged that the contract was illegal after the fact, in its answer to Farthing's complaint.

Farthing brought this suit in federal district court on July 22, 2016. He demanded a jury trial and pled a single count of breach of contract, seeking as relief $102,083.31 in "unpaid base salary" and $294,000.00 in anticipated commissions on real estate sales, which Farthing alleges were imminent when Coco Beach terminated the agreement.

After the parties filed cross-motions for summary judgment, the magistrate judge, sitting by consent,[2] issued an order granting Coco Beach's motion for summary judgment on January 3, 2017. She found that Farthing's employment agreement was "null and void because [Farthing] was effecting real estate broker duties without a license under Puerto Rico law," and therefore that Farthing was entitled to no relief.

II.

We review de novo both the entry of summary judgment for Coco Beach and the interpretation of the parties' contract. See

---

[2] The parties voluntarily consented to have a federal magistrate judge conduct all proceedings in the case, including the entry of final judgment. See Fed. R. Civ. P. 73.

Dukes Bridge LLC v. Beinhocker, 856 F.3d 186, 189 (1st Cir. 2017). At summary judgment, we must "credit[] the evidence favorable to [Farthing] . . . and draw[] all reasonable inferences in [his] favor," Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016), and we may affirm only if "there is no genuine dispute as to any material fact and [Coco Beach] is entitled to judgment as a matter of law," id. (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014) (quoting Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 36 (1st Cir. 2014)). The parties agree that Puerto Rico's substantive law applies in this diversity case, and "[w]e follow [their] lead." Dukes Bridge, 856 F.3d at 189 (citing Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003)).

The agreement between Farthing and Coco Beach was held to be null and void on the reasoning that the agreement provided on its face that Farthing would perform the duties of a real estate broker but Farthing lacked the necessary license. The holding relies on title 31, section 3372 of the Laws of Puerto Rico: "The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." P.R. Laws Ann. tit. 31, § 3372; see also Cecort Realty Dev., Inc.

v. Llompart-Zeno, 100 F. Supp. 3d 145, 161 (D.P.R. 2015) ("[A] contract is deemed null . . . if it is contrary to law, morals[,] or public order.  In such cases of nullity, even a party that has benefitted from it may challenge a contract for being contrary to law, morals[,] or public order." (citations omitted) (quoting De Jesús González v. Autoridad de Carreteras, 148 P.R. Dec. 255, 264 (1999))).  Consequently, it was held that Farthing could not be heard to seek damages for Coco Beach's purported breach.

The entry of summary judgment was error.  There are important disputes of fact as to liability -- putting aside the disputed assertion of accord and satisfaction -- each of which is material to the question of whether Farthing may seek relief despite the fact that his employment agreement, in whole or in part, may have violated Puerto Rico's public policy.

One disputed fact is whether Coco Beach was aware, or should have been aware, at the agreement's signing that Farthing did not have a Puerto Rico license and that one would be required.  Another is whether some or all of Farthing's duties under the agreement required a license.[3]  The court thought it irrelevant

---

[3]    Farthing has consistently argued that, as a Coco Beach employee, he stepped into Coco Beach's shoes and was selling Coco Beach's real estate as an "owner . . . acting in his/her own interest," which the statute excludes from the definition of "real estate broker."  P.R. Laws Ann. tit. 20, § 3025(g).  We need not decide whether Farthing's reading of § 3025(g) is correct.  Even if the court below correctly adopted a contrary reading of the

- 9 -

whether "Coco Beach had knowledge or not that [Farthing] did not possess a real estate license when it hired [Farthing]." We disagree. If Farthing was "excusably ignorant" of the fact that his employment agreement may have violated Puerto Rico's public policy -- and if Coco Beach was <u>not</u> excusably ignorant -- then Farthing "has a claim for damages for [the agreement's] breach," notwithstanding the alleged violation of public policy. Restatement (Second) of Contracts § 180 (Am. Law Inst. 1981); <u>see also</u> P.R. Laws Ann. tit. 31, § 3516 (distinguishing between a "crime or misdemeanor common to both contracting parties" and a "crime or misdemeanor on the part of only one of the contracting parties"); <u>Sánchez Rodríguez</u> v. <u>López Jiménez</u>, 16 P.R. Offic. Trans. 214, 228 (explaining that "if both parties [to an illegal contract] are at fault, they would be barred from bringing an action against each other," but that this "doctrine requires that the [plaintiff] knows or should know the circumstances from which the illegality stems, or the illegality itself"), <u>clarified on reconsideration</u>, 16 P.R. Offic. Trans. 480 (1985).

"[T]he rule prohibiting enforcement of illegal contracts" itself has exceptions, as the citations above establish. <u>Am. Buying Ins. Servs., Inc.</u> v. <u>S. Kornreich & Sons, Inc.</u>, 944 F. Supp. 240, 244-45 (S.D.N.Y. 1996) (explaining that

---

statute, material disputes of fact preclude entry of summary judgment for the defendant.

the rule is not "inflexib[le]" and admits of "myriad exceptions," including situations in which "the plaintiff was excusably ignorant, and the defendant was not").  In our view, the exception for excusable ignorance does not undercut, but rather reinforces, the rule's deterrence aims.  See, e.g., Juliet P. Kostritsky, Illegal Contracts and Efficient Deterrence: A Study in Modern Contract Theory, 74 Iowa L. Rev. 115, 138 (1988) (observing that "it is costly to deter illegal contract formation by placing the loss on unknowing parties" and that, in appropriate cases involving excusable ignorance, courts "can further efficient deterrence by regularly denying the knowledgeable party relief and by granting recovery to the less knowledgeable party," so that "the person in the best position to avoid the illegality can do so at the least cost").  Whether Farthing can avail himself of the excusable ignorance exception, or any other exception to the "void as against public policy" doctrine, will require additional factfinding as to the parties' knowledge, or excusable lack thereof, when Coco Beach hired Farthing.

Another disputed material fact is whether at least some of Farthing's job responsibilities could have been lawfully performed in Puerto Rico without a broker's license.  Farthing points out that the agreement had a severability clause, which he argues would allow enforcement of the agreement's base salary clause even if the clauses pertaining to sales commissions are

- 11 -

illegal and void.  See Santiago-Sepúlveda v. Esso Standard Oil Co. (P.R.), Inc., 643 F.3d 1, 8 (1st Cir. 2011) (noting that Puerto Rico law permits enforcement of severability clauses to which parties stipulated in their contract (citing McCrillis v. P.R. Mar. Shipping Auth., 23 P.R. Offic. Trans. 109, 132–33 (1989))).

If Farthing is correct that some of his duties did not require a license, then there is also the issue of whether the agreement is divisible.  Under McCrillis, even in the absence of a severability clause, "[c]ivil law accepts that 'in some cases partial nullity may be used as a means to guarantee the continuity of a business whose fundamental content is not affected by the void portion.'"  23 P.R. Offic. Trans. at 131 (citations to Spanish-language authorities omitted); see also, e.g., Restatement (Second) of Contracts § 184 (discussing partial enforcement of an agreement where "the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange"); 2 E. Allen Farnsworth, Farnsworth on Contracts § 5.8 (3d ed. 2004) (stating that courts "often avoid an 'all or nothing' decision by holding agreements unenforceable only in part" and that a court will be "more likely to do so in favor of a party who has already relied on the agreement, as by preparation or performance").

Farthing claims that at least part of his job was "organizing the basis of an infrastructure to support the marketing of his employer's property," and, further, that he engaged in sales

activities as the employee of a real estate seller -- that is, Coco Beach -- rather than as an intermediary between a seller and buyer.  See P.R. Laws Ann. tit. 20, § 3025(g) (defining "real estate broker" as one who "acts as intermediary" and distinguishing such an individual from an owner-broker who "acts in his/her own interest").  Coco Beach argues that Farthing's employment duties, even if not uniformly those of a real estate broker, were "thoroughly intermingled [and] interdependent," and that "[t]here is nothing in [the agreement] or in the record . . . to suggest that [Farthing's] bas[e] salary was not compensation for his real estate brokering duties."  That, in itself, is a disputed issue of fact, material to both severability and divisibility.

Viewing the evidence in the light most favorable to Farthing, we do not agree with the court below that "there is no genuine [factual] dispute" relevant to these issues.  Burns, 829 F.3d at 8 (quoting Fed. R. Civ. P. 56(a)).  If further factfinding were to reveal that at least some of Farthing's job duties could be performed lawfully without a license, then Farthing might be entitled to relief.  We express no view on whether Farthing's employment agreement is severable or divisible, leaving those questions for the district court to answer on remand with the benefit of a more complete factual and legal record.

III.

We vacate the entry of summary judgment in favor of Coco Beach and remand for further proceedings consistent with this opinion.  No costs are awarded.